ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| METSO PAPER USA, INC., | : | Civil Action No.:   3:CV-08-47 |
| Plaintiff, | : | **FILED** |
| | : | **SCRANTON** |
| v. | : | |
| | : | MAR 2 4 2011 |
| GENERAL ELECTRIC COMPANY, | : | |
| | : | PER  ̶M ̶ ̶6 ̶ ̶ ̶r ̶ |
| Defendant. | : | **DEPUTY CLERK** |

## PLAINTIFF'S MOTION TO PRECLUDE DEFENDANT'S USE OF HARRI KYTOMAA AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Metso Paper USA, Inc. ("Metso"), hereby moves to exclude Defendant General Electric Company's ("GE") use of Harri Kytomaa as an expert regarding the warehousing practices of Metso prior to the fire that occurred at Metso's warehouse facility on January 21, 2006.

### FACTS

This lawsuit arises out of a fire that occurred on January 21, 2006, at Metso's facility located in Clarks Summit, Pennsylvania (the property"). The fire occurred when a certain GE Metal Halide Bulb ("the Bulb") exploded violently and without warning, showering shattered glass and quartz, heated to temperatures well in excess of most ignition points for products kept in a warehouse, and ignited materials stored on holding racks in the origin room. Consequently, Metso's property was damaged by fire, smoke and water. Plaintiff's damages total $573,384.00.

The Bulb at issue was installed in a fixture hanging from the ceiling. The ceiling was approximately twenty (20) feet high. At no time prior to the loss did Metso ever notice a decrease in the intensity of the Bulb, nor was there any indication that failure or explosion of the Bulb was imminent. The Bulb was in use for less than three (3) years. At no time before the loss did Metso know that the Bulb could violently explode, or that as a result of such explosion that hot fragments of quartz and glass capable of igniting plastics and other materials would be propelled throughout the

origin room.

Defendant GE proffered Harri Kytomaa ("Kytomaa") as an expert witness in mechanical engineering in support of its theory that Metso used the Bulb beyond its rated life (an electrical and/or human factors/ergonomics issue, not mechanical engineering issue) and that Metso improperly used the Bulb in an open fixture over combustible materials (again, an electrical and/or human factors/ergonomics issue, not mechanical engineering issue). A copy of the Kytomaa's report, dated August 31, 2010, is annexed hereto as *Exhibit A*. Specifically, while Kytomaa does not opine within a reasonable degree of engineering certainty of anything (a stand alone basis to preclude Kytomaa), he does generally state that Metso failed to replace the Bulb prior to the end of its purported rated life. He also generally states that Metso should not have placed the Bulb in an open fixture over combustible materials, and if it did, a lens cover should be used in such an application.

First, Kytomaa does not provide an "expert" opinion in his report. In fact, at no point in his report does he state that any statement is made with any degree of engineering, scientific, etc. certainty. *See* Ex. A. Second, Kytomaa allegedly relies on controlled laboratory testing conducted by Defendant GE and other lighting manufacturers inapplicable to the facts relative to this loss. And, even more disturbing, these alleged laboratory tests were never disclosed by Defendant GE during discovery of this case, despite many requests by Plaintiff for such tests and/or required to be disclosed under FRCP 26's mandatory disclosures.

Third, Kytomaa fails to account for Metso's actual usage of the Bulb prior to the loss, and therefore, cannot opine, as he does, that Metso ignored GE and industry recommendations regarding re-lamping as it relates to the issue of rated life. Fourth, Kytomaa's opinions regarding rated life are based upon information his counsel provided to him, which information is contrary to the actual facts and evidence in this matter. Additionally, Kytomaa has no training and/or education of any kind relative to his alleged expert opinions concerning Defendant GE's label and/or Metso's understanding and/or

compliance with that labeling. Since Kytomaa's opinions do not fit the facts of this case, his opinions are irrelevant and would be unhelpful to the jury. Accordingly, Kytomaa's opinions should be precluded as a matter of law.

In addition, although Kytomaa opined that Metso improperly placed the Bulb over combustible materials, it is uncontroverted that Metso placed the Bulb at issue over an aisle and not over any combustible materials whatsoever. *See*, deposition testimony of David Kuzmick dated February 11, 2009 at pages 21 and 63, which is annexed hereto as *Exhibit B*. Thus, Kytomaa based his opinions on inaccurate facts which are belied by both the evidence and the prior testimony in this matter. Accordingly, Kytomaa's opinion that Metso breached a standard of reasonable care by placing the Bulb over combustible materials is completely irrelevant here and will serve only to confuse and/or mislead the jury.

## STANDARD

A motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered. *See, Meridian Oil and Gas Enterprises Inc. v. Penn Central Corp.*, 418 Pa.Super. 231 (1992), *alloc. denied*, 534 Pa. 649 (1983). The purpose of a motion in limine is twofold: (1) to provide the trial court with a pre-trial opportunity to carefully weigh and consider potentially prejudicial and harmful evidence; and (2) to preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the non-proferring party. *See, Commonwealth v. Noll*, 443 Pa.Super. 602 (1995), *alloc. denied*, 543 Pa. 726 (1996).

## ARGUMENT

Kytomaa's alleged expert opinions should be precluded at trial in this matter because such opinions do not fit the facts of this case and they are based, in part, on inaccurate facts and data. Also, by his own testimony, Kytomaa has no training and/or experience of any kind related to any of his

alleged expert opinions.  As such, his opinions will be unhelpful to the jury and should be precluded from a trial of this matter.

The Court's role as gatekeeper in preventing improper "expert" testimony is set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and clarified by *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).   Under Federal Rule of Evidence 702, an expert must be qualified to render the opinion proffered.  *Daubert*, 509 U.S. at 592; *see also, General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (evidence will not be admitted if it "is connected to existing data only by the *ipse dixit* of the expert").  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise …

The proponent of the expert testimony has the burden to show that the testimony is admissible under Rule 702.  *Daubert,* 509 U.S. at 592.  It is incumbent upon Defendant GE to prove that Kytomaa is qualified and has reliably applied his expert reasoning to the facts of the case.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994); *Pineda v. Ford Motor Co.*, 520 F.3d 237 (C.A.3 (Pa.) 2008).  However, Defendant GE cannot meet this burden.

The Third Circuit described Rule 702 as being comprised of three major requirements: (1) that the proffered witness must be an expert, ie., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge, ie., reliability; and (3) the expert's testimony must assist the trier of fact, ie., fit.  *United States v. Schiff*, 602 F.3d 152 (3d Cir. 2010).
It is typically understood in terms of whether there is a sufficient 'fit' between the expert's testimony and the facts that the jury is being asked to consider.  *Schiff, supra*.  In assessing whether an expert's proposed testimony 'fits', the test is whether the expert proffered is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.  *Schiff, supra*.

Kytomaa did not base his opinions on an analysis concerning Metso's actual usage of the Bulb prior to the loss. *See*, deposition testimony of Harri Kytomaa dated January 25, 2011 at page 119, which is annexed hereto as *Exhibit C.* By his own admission, the actual usage of the Bulb would change the rated life of the Bulb. *See*, Ex. C at page 119. Absent this specific information about Metso's usage of the Bulb, Kytomaa's opinions amount to nothing more than mere speculation. Instead, Kytomaa relies on controlled laboratory testing conducted by Defendant GE and other lighting manufacturers inapplicable to the facts relative to this loss (which information was not provided to Plaintiff as required by FRCP 26 disclosures and/or during discovery). In failing to account for Metso's actual usage of the Bulb prior to the loss, Kytomaa cannot opine that Metso ignored Defendant GE and industry recommendations regarding re-lamping as it relates to the issue of rated life. Therefore, Kytomaa's opinions do not fit the facts of this case, are, by definition, irrelevant, and will be unhelpful to the jury. As such, Kytomaa's opinions should be precluded as a matter of law.

Additionally, the reliability of expert testimony depends on whether the expert's conclusions are based on sufficient facts or data. *Zaremba v. General Motors Corp.*, 360 F.3d 355 (2d Cir. 2004); *United States v. Tin Yat Chin*, 371 F.3d 31 (2d Cir. 2004). Kytomaa opined that Metso improperly placed the Bulb over combustible materials. However, it is undisputed that Metso placed the Bulb at issue over an aisle and not over any combustible materials whatsoever. *See*, Ex. B at pages 21 and 63. Thus, Kytomaa based his opinions on inaccurate facts. Accordingly, Kytomaa's opinions that Metso breached a standard of reasonable care by placing the Bulb over combustible materials are completely irrelevant here. Consequently, Kytomaa's opinions should be inadmissible as a matter of law. Further, Kytomaa based his opinions on the mistaken belief that Metso only had the Bulb on during the work week for less than 120 hours. In fact, Metso used the Bulb during the work week on a minimum of a 120 hour cycle. *See* Ex. D, Supplemental Discovery response.

Further, Kytomaa admitted to having no education and/or training concerning any relevant field

related to labeling, warnings and/or a user's understanding of labeling and/or warnings (i.e., psychology, human factors, ergonomics). *See*, Ex. C at pages 43- 46.   He even admitted that his CV/Bio does not reflect any electrical engineering expertise, because he is a mechanical engineer; and it does not mention any lighting industry and/or HID experience. *Id.* at p. 43.  He has only briefly worked on three or four matters involving High Intensity Discharge bulbs (this is the type of Bulb at issue). *See*, Ex. C at page 29.  And, of those three or four matters, at least one of those matters the purpose of his retention was to examine fire causation and spread, neither of which is involved in this litigation and/or why he is being presented by Defendant GE. *Id.* at p. 30.  Plaintiff actually respectfully requests the Court to review Kytomaa's transcript; Plaintiff proposes that after that review, the Court will agree Kytomaa has no basis for testifying and/or offering any opinions in this litigation.

Finally, Kytomaa testified that his opinions were based in part upon the materials contained on a disc (deposition exhibit 9) which was first presented to Plaintiff during Kytomaa's deposition (Plaintiff's counsel was not provided access to a computer to review the disc).  Plaintiff has attempted to review the contents of the disc; however, no IT person is actually able to access the information on the disc.  Kytomaa cannot testify to any opinion based upon information contained on the disc.

WHEREFORE, Plaintiff, Metso Paper USA, Inc., requests that this Court order that Defendant GE's expert witness Harri Kytomaa be precluded from testifying in the presence of the trier of fact at any time during the trial proceedings, and Mr. Kytomaa's opinions be precluded from the trial.

Dated: March 16, 2011

Respectfully submitted,

By: _____
Howard A. Rothenberg, Esquire
Herlands Rothenberg & Levine
345 Wyoming Avenue – Suite 210
Scranton, PA 18503

By: _____
Robert A. Stern (*pro hac vice*)
Clausen Miller P.C.
1 Chase Manhattan Plaza
New York, New York 10005

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

METSO PAPER USA, INC.,          :      CIVIL ACTION NO.: 3:CV-08-47

            Plaintiff,      :

v.                      :

GENERAL ELECTRIC COMPANY,   :

            Defendant.    :

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CERTIFICATE OF SERVICE

     I, Robert A. Stern, Esquire, attorney for Plaintiff, served Plaintiff's Motion to Preclude Defendant's Use of Harri Kytomaa and Incorporated Memorandum of Law upon Defendant's counsel below named, via FedEx Express Saver on this 23rd day of March, 2011, addressed as follows;

THOMAS COOPER, ESQ.
SMITH, DUGGAN, LLP
LINCOLN NORTH
55 OLD BEDFORD ROAD
LINCOLN, MA 01773-1125

JAMES M. CAMPBELL, ESQ
CAMPBELL CAMPBELL EDWARDS &
CONROY
ONE CONSTITUTION PLAZA
3RD FLOOR
BOSTON, MA 02129

BENJAMIN A. NICOLOSI, ESQ.
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
401 ADAMS AVENUE, SUITE 400
SCRANTON, PA 18510-2025

Respectfully Submitted,

CLAUSEN MILLER, P.C.

By:

Robert A. Stern, Esq. (admitted pro hac vice)
*Attorneys for Plaintiff*
METSO PAPER USA, INC.
One Chase Manhattan Plaza, 39th Floor
New York, New York 10005
(212) 805-3900