IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| METSO PAPER USA, INC., | : | Civil Action No. 3:CV-08-47 |
| Plaintiff, | : | |
| v. | : | |
| GENERAL ELECTRIC COMPANY, | : | |
| Defendant. | : | |

------------------------------------------------------------

### OPPOSITION OF GENERAL ELECTRIC COMPANY PLAINTIFF'S MOTION TO PRECLUDE DEFENDANT'S USE OF HARRI KYTÖMAA AND INCORPORATED MEMORANDUM OF LAW

Zurich Insurance, standing in the shoes of its insured, Metso Paper, alleges that a GE 750 watt metal halide lamp ruptured and started a fire at the Metso facility as the result of defects in design and manufacture. GE denies this and claims that the fire was not started by the lamp and that the lamp was safe for its intended use by its intended users. GE contends that Metso Paper was negligent and assumed the risk of fire in its use of the lamp. Dr. Kytömaa's opinions address the safety of the lamp's design and the improper use amounting to negligence and assumption of the risk by Metso Paper.

Metso Paper cites *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 US 579 (1993) and its progeny, and *United States v. Schiff,* 602 F.3d 152 (3d Cir. 2010). *Schiff* mandates that Fed. R. Evid. 702 requires that the witness be a qualified expert, that the witness be testifying about matters requiring scientific, technical, or specialized knowledge, and that the proffered testimony be helpful to the jury. The proffered testimony of Dr. Kytömaa easily meets these three requirements. Dr. Kytömaa's testimony concerns the safety of the subject product and how the subject product was

1

used by Metso. The safety of a metal halide lamp is a topic that requires specialized knowledge and is not known or easily accessible to the average lay person. Thus, Dr. Kytömaa's specialized knowledge concerning metal halide lighting is an appropriate subject for expert testimony. The thoroughly documented facts and opinions expressed by Dr. Kytömaa in his report and deposition amply demonstrate his expertise concerning the subject matter. Dr. Kytömaa's curriculum vitae is attached as Exhibit A. Finally, the opinions and analysis of Dr. Kytömaa are pertinent to the issues in the case: the safety of the lamp, how it was being used, and whether Metso Paper was negligent and assumed the risk of a lamp failure. His opinions will directly address issues that the jury will face in the trial.

Metso Paper also complains about several aspects of Dr. Kytömaa's opinions and apparently seeks to exclude all of his opinions because it claims that his facts are wrong and he is not qualified in certain areas. Among other things, Dr. Kytömaa evaluated the design of the 750 watt GE Pulsearc® lamp by analyzing the risk and benefits of the design, including the packaging, which is a necessary part of the analysis of the risk and how GE has controlled it. This portion of Dr. Kytömaa's opinion is not addressed in the plaintiff's motion. To the extent his opinions deal with the risks and benefits of the lamp design, i.e, the safety of the lamp design, the plaintiff has not challenged those opinions. With respect to those opinions, the arguments made by the plaintiff in the motions and memorandum, such as the assertion that Dr. Kytömaa did not consider the actual usage of the lamp by Metso Paper, are largely irrelevant. Therefore, the motion of the plaintiff should be denied to the extent that Dr. Kytömaa is offering opinions regarding the suitability and safety of the lamp for its intended use by the intended users.

Dr. Kytömaa also reviewed the evidence of Metso Paper's use of the subject lamp in the mixing room at its facility and noted that Metso did not follow the plain instructions provided by GE in its product literature and on its packaging. GE responds to the five specific points made by the plaintiff in its motion as follows:

(1) Metso Paper claims that Dr. Kytomaa's opinions were not expressed to a reasonable degree of certainty. That is incorrect. An affidavit from Dr. Kytömaa is attached as Exhibit B that corrects the plaintiff's misunderstanding.

(2) The plaintiff asserts that "Kytömaa allegedly relies on controlled laboratory testing conducted by Defendant GE and other lighting manufacturers inapplicable to the facts relative to this loss." Dr. Kytömaa did not rely on any undisclosed testing performed by GE or other lighting manufacturers and it is unclear what the plaintiff is referring to in this statement. To the extent the plaintiff has requested the Court to preclude Dr. Kytömaa from relying on "controlled laboratory testing conducted by Defendant GE and other lighting manufacturers," it should be denied for vagueness.

The plaintiff may be referring, incorrectly, to testing that Kytömaa himself did as a consulting expert on another matter. An affidavit from Dr. Kytömaa confirms what counsel has already told plaintiff's counsel during his deposition: he did not rely on that testing and it has not been disclosed to anyone. See affidavit of Kytömaa attached to this opposition as Exhibit B. Fed. R. Civ. P. 26(D) explicitly protects information prepared by a non-testifying expert, as Dr. Kytömaa was in the other case.

(3) The plaintiff suggests that GE has failed to disclose some "alleged laboratory tests conducted by Defendant GE and other lighting manufacturers" that have been requested. This assertion is so vague that GE does not know what testing the plaintiff is

3

referring to. GE has not failed to disclose any test. To the contrary, GE has produced thousands of pages of documents related to metal halide lighting and not withheld any responsive documents or information.

(4) The plaintiff claims that Dr. Kytömaa "fail[ed] to account for Metso's actual usage of the Bulb prior to the loss." GE disagrees. Dr. Kytömaa considered Metso Paper's actual usage, to the extent it could be determined. Metso Paper did not keep records of the actual burning times of the subject lamp. However, Dr. Kytömaa was able to estimate the burning history from various discovery responses, including interrogatory answers, expert reports, and deposition testimony. There is sufficient factual information in the record to show that he had a reasonable factual basis for his conclusions about Metso Paper's actual usage. For example, the plaintiff's own expert, Randy Marshall, testified that he was informed by David Kuzmick in January 2006, shortly after the fire, that Metso operated its lamps from Monday morning until Friday at 11:00 p.m and on weekends for shorter periods of time. See Exhibit C, excerpts from Marshall deposition at 40-41. Mr. Marshall includes these times in his report. See Exhibit D for an excerpt from Marshall report. One can do simple arithmetic to calculate the approximate hours that Metso had operated the subject lamp, if it was still operating, as of the date of the fire. This figure exceeds 19,000 hours. If Metso Paper believes that these facts are incorrect, it may cross-examine Dr. Kytömaa at trial, but there are adequate sources in the record to support Dr. Kytömaa's conclusion about Metso's usage of the lamp.

(5) The plaintiff also complains that Dr. Kytömaa's opinions about rated life "are based on information his counsel provided to him." This is not correct. Dr. Kytömaa identified numerous documents that contain the rated life for the subject lamp. Dr.

4

Kytömaa testified at length in his deposition about the rated life of the subject lamp. Rated life is not a matter of expert opinion, except to the extent that Dr. Kytömaa explains what the term means based on the definition published by GE and how it relates to the median life of an actual population of lamps. GE has established and set forth in publications the rated life of the subject lamp. One example of a publication stating the rated life, which Mesto received before purchasing the lamps, is attached as Exhibit E. The rated life established and published by GE for this model is 16,000 hours.

(6) Dr. Kytömaa's opinions primarily relate to the safety of the design of the product, an area clearly within the scope of expertise of a Ph.D. in engineering and Dr. Kytömaa's experience in fire science. There is no specific engineering discipline for lighting products. Mechanical engineering is relevant to the considerations of risk and benefits of metal halide lighting.

(7) Dr. Kytömaa did not express any opinions about the adequacy of the warning, but merely read and used the warning information in his analysis. The warning is written in plain English and does not require any special qualifications to understand and use.

(8) Dr. Kytömaa is an expert in, among other things, ignition and spread of fires. The plaintiff does not question his qualifications in these areas. Pursuant to this area of expertise, Dr. Kytömaa expressed the opinion that Metso Paper placed 750 watt metal halide lamps in open fixtures over combustible materials in its mixing room. (Metso acknowledges that it chose to use open fixtures, but claims that the fixture containing the subject lamp was not directly above combustible materials.) Dr. Kytömaa concluded that doing so violated the plain warnings given by GE of the risk of fire created by doing so. That opinion is easily within the expertise of Dr. Kytömaa and is obviously helpful to the

5

jury in this matter. Metso itself claims that the subject lamp ruptured and that quartz pieces fell onto combustible material. It cannot credibly try to strike Dr. Kytömaa's opinion that Metso should not have used open fixtures above combustible materials when that is a key aspect of its case against GE.

(9) A review of Dr. Kytömaa's methods in reaching his opinions about Metso Paper shows that he gathered extensive information about the configuration of the Metso facility, including visiting the facility and taking measurements there, studying the photographs of the facility's configuration before the fire, examining the layout of the lights, reviewing extensive discovery materials concerning Metso Paper's usage of the lamps, all of which will provide ample basis for the factual assertions that Dr. Kytömaa has made which underlie his opinions. Dr. Kyotmaa gathered all of the available information about the Metso facility and how it was laid out at the time of the fire. Dr. Kytömaa investigated the relationship between the fixtures in the room of origin and the various materials, furniture, and equipment stored there. Dr. Kytömaa concluded that Metso Paper, given its decision not to re-lamp before rated life, should have chosen a fixture with a lens to enclose the lamp and that this advice was contained in warnings provided by GE. Dr. Kytömaa gives a cogent and clear explanation for what Metso did with its lighting system, how it failed to follow the plain instruction provided by GE, and what it should have done differently. His methodology is straightforward, and all of his factual statements are adequately supported. Therefore, the motion of the plaintiff on *Daubert* grounds should be denied. The plaintiff is free to cross-examine Dr. Kytömaa on any alleged shortcomings in his defense of the facts.

For the reasons stated above, the Court should deny the motion to preclude any of

Dr. Kytömaa's opinions.

                    Respectfully Submitted,

                    Attorney for General Electric Company

                    */s/ Thomas G. Cooper*

Thomas G. Cooper
Smith & Duggan LLP
55 Old Bedford Road
Lincoln, MA 01773
617.228.4446

Benjamin A. Nicolosi
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
401 Adams Avenue, Suite 400
Scranton, PA 18510-2025
570.496.4606

James M. Campbell
Campbell Campbell Edwards & Conroy
One Constitution Plaza
Third Floor
Boston, MA 02129

April 7, 2011

7

## CERTIFICATE OF SERVICE

I, Thomas G. Cooper, Esquire, attorney for Defendant General Electric Company, certify that on this date I caused the foregoing document to be served on all parties of interest by electronic filing:

Howard Rothenberg, Esquire  
Herlands, Rothenberg & Levine  
345 Wyoming Avenue, Suite 210  
Scranton, PA 18503

Robert A. Stern, Esquire  
Clausen Miller P.C.  
One Chase Manhattan Plaza  
New York, NY  10005

_____  
Thomas G. Cooper

Dated: April 7, 2011